**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marissa Janelle Proctor, | No. CV-19-05503-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Marissa Proctor's Application for Disability Insurance Benefits and Supplemental Security Income Benefits by the Social Security Administration. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 19, Pl. Br.), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 22, Def. Br.), and Plaintiff's Reply Brief (Doc. 23, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 17, R.) and now reverses the Administrative Law Judge's ("ALJ") decision. (R. at 12–36.)

## I.    BACKGROUND

Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income benefits in January 2013. (R. at 172, 338, 345.) The Commissioner denied Plaintiff's application initially and on reconsideration. (R. at 101–68, 197–211.) Plaintiff and a vocational expert then testified at an administrative hearing before an ALJ. (R. at 37–69.) In June 2015, the ALJ found that Plaintiff was not disabled. (R. at 169–88.)

1    The Appeals Council subsequently granted Plaintiff's request for review and remanded
2    the case to the ALJ for reassessment of Plaintiff's mental and physical impairments. (R.
3    at 189–94.) The ALJ then held another administrative hearing. (R. at 70–100.) The ALJ
4    again found that Plaintiff was not disabled. (R. at 12–36.) In August 2019, the Appeals
5    Council denied Plaintiff's request for review, making the ALJ's decision the final
6    decision of the Commissioner. (R. at 1–6.) Plaintiff now seeks judicial review of the
7    Commissioner's decision pursuant to 42 U.S.C. § 405(g).

8         The pertinent medical evidence will be discussed in addressing the issues raised by
9    Plaintiff. Upon considering the medical records and opinions, the ALJ evaluated
10   Plaintiff's disability based on the severe impairment of chronic pain syndrome. (R. at 18.)
11   The ALJ reviewed the entire record, including medical records and statements from
12   Plaintiff, a vocational expert, a State agency medical consultant, Plaintiff's treating
13   physicians, and Plaintiff's counselor. (R. at 18–25.)

14        The ALJ considered back pain, rheumatoid arthritis, a history of opioid
15   dependence, a fifth hammertoe, migraine headaches, and prediabetes, but did not find
16   these impairments, separately or combined, to be severe. (R. at 19.) The ALJ concluded
17   that Plaintiff had the residual function capacity ("RFC") to perform a full range of work
18   at all exertional levels "that does not involve climbing ladders, ropes or scaffolds or
19   exposure to unprotected heights." (R. at 25.)

20        In making these findings, the ALJ acknowledged Plaintiff's complaints about
21   "back pain that radiates to the legs," "rheumatoid arthritis that affects her hands, feet,
22   arms, wrists, back and hips," and "[o]ngoing symptoms include chronic pain, diffuse joint
23   aches, muscle tension, fatigue and intermittent headaches." (R. at 22.) The ALJ also
24   analyzed conflicting medical and opinion evidence. (R. at 22–25.) The ALJ nevertheless
25   found that the medical record demonstrates functional abilities and behaviors inconsistent
26   with the duration, frequency, and severity of the alleged limitations. (R. at 23.) Based on
27   Plaintiff's RFC, the ALJ determined that Plaintiff could perform past relevant work as an
28   office coordinator. (R. at 25.) Accordingly, the ALJ found that Plaintiff was not disabled

1    during the relevant period. (R. at 26.)

2    **II.    LEGAL STANDARD**

3         In determining whether to reverse an ALJ's decision, the district court reviews

4    only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236

5    F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's

6    disability determination only if it is not supported by substantial evidence or is based on

7    legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is

8    more than a scintilla, but less than a preponderance; it is relevant evidence that a

9    reasonable person might accept as adequate to support a conclusion considering the

10   record as a whole. *Id.* To determine whether substantial evidence supports a decision, the

11   Court must consider the record as a whole and may not affirm simply by isolating a

12   "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is

13   susceptible to more than one rational interpretation, one of which supports the ALJ's

14   decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954

15   (9th Cir. 2002) (citations omitted). "[The Court] review[s] only the reasons provided by

16   the ALJ in the disability determination and may not affirm the ALJ on a ground upon

17   which he [or she] did not rely." *Id.* "Even when the ALJ commits legal error, [the Court]

18   uphold[s] the decision where that error is harmless." *Treichler v. Comm'r of Soc. Sec.*,

19   775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the

20   ultimate nondisability determination, or if the agency's path may reasonably be

21   discerned, even if the agency explains its decision with less than ideal clarity." *Id.*

22   (citations and internal quotation marks omitted).

23        To determine whether a claimant is disabled, the ALJ follows a five-step process.

24   20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps,

25   but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094,

26   1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is

27   presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the

28   claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines

1    whether the claimant has a "severe" medically determinable physical or mental

2    impairment. *Id*. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry

3    ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or

4    combination of impairments meets or medically equals an impairment listed in Appendix

5    1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is

6    automatically found to be disabled. If not, the ALJ proceeds to step four. *Id*. At step four,

7    the ALJ assesses the claimant's RFC and determines whether the claimant is still capable

8    of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not

9    disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step,

10   where the ALJ determines whether the claimant can perform any other work in the

11   national economy based on the claimant's RFC, age, education, and work experience. *Id.*

12   § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled.

13   *Id.*

14   **III.    DISCUSSION**

15          Plaintiff raises three arguments. First, she argues that the ALJ erred by assigning

16   "little weight" to the two treating physicians' assessments and according "great weight"

17   to the State agency's medical consultant. (Pl. Br. at 11.) Second, Plaintiff argues that the

18   ALJ committed legal error by rejecting her symptom testimony. (*Id.* at 19.) Third,

19   Plaintiff argues that the ALJ improperly concluded that several impairments were not

20   severe. (*Id.* at 23.) As addressed in turn below, the Court agrees with Plaintiff's first

21   argument but disagrees with the other two.

22          **A.       Medical Opinion Evidence**

23          Plaintiff's first assignment of error is that the ALJ improperly rejected the

24   opinions of her treating physicians, Tiffany Nunnelley, D.O., and Joel Edelstein, D.O.,

25   and afforded too much weight to the State agency's medical consultant. (Pl. Br. at 11.)

26   Defendant responds that substantial evidence supports the ALJ's decision and that the

27   ALJ set forth specific reasons for doing so. (Def. Br. at 9–10.) The Court agrees with

28   Plaintiff.

1    An ALJ must consider all medical opinions when assessing a claimant's RFC. The

2 regulations instruct that the weight assigned to medical opinions is determined based on

3 factors including the examining relationship, treatment relationship, the length and nature

4 of treatment, supportability, consistency, and specialization, among other factors. 20

5 C.F.R. § 404.1527(c). That said, as Plaintiff notes, "special weight" is generally accorded

6 to opinions of the claimant's treating physician. *Black & Decker Disability Plan v. Nord*,

7 538 U.S. 822, 825 (2003); *see also Orn*, 495 F.3d at 631 ("By rule, the Social Security

8 Administration favors the opinion of a treating physician over non-treating physicians.").

9    Despite the deference generally afforded to treating physicians, the ALJ is not

10 required to rely on them. If a treating physician's opinion is not "well-supported by

11 medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent

12 with the other substantial evidence in [the] case record," the ALJ need not give it

13 controlling weight. *Id*. § 404.1527(c)(2); s*ee also Tonapetyan v. Halter*, 242 F.3d 1144,

14 1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are

15 conclusory, brief, and unsupported by the record as a whole or by objective medical

16 findings). If a treating physician's opinion is not given controlling weight, the ALJ must

17 consider the factors listed in 20 C.F.R. § 404.1527(c) in assigning its relative weight.

18 When rejecting a treating physician's testimony, "the ALJ must do more than offer his

19 conclusions. He must set forth his own interpretations and explain why they, rather than

20 the doctors', are correct." *Orn*, 495 F.3d at 631 (citing *Embrey v. Bowen*, 849 F.2d 418,

21 421–22 (9th Cir. 1988)).

22                     **a.  Treating Physicians' Opinions**

23    The ALJ considered medical assessments from Drs. Nunnelley and Edelstein,

24 Plaintiff's treating physicians. (R. at 24.) The ALJ gave "little weight" to both physicians.

25 (R. at 24.) Dr. Nunnelley indicated that she "[did] not think [Plaintiff] will be able to

26 work for the next year or in the next few years." (R. at 858.) Dr. Edelstein also concluded

27 that Plaintiff retained exertional capacities for less than even sedentary work. (R. at 903–

28 04.) The ALJ concluded that these opinions proposed "extreme limitations." (R. at 24.)

He stated:

> [T]he extreme limitations in these opinions are not supported by the medical record which contains unremarkable or mild findings confirmed by diagnostic imaging and few physical examination findings aside from tenderness. Additionally, such extreme limitations are not consistent with the claimant's own statements she is able to walk 2.5 miles three times per week and able to care for her home and children without significant low back pain in both 2015 and 2018 spanning the longitudinal record.

(R. at 24 (citations omitted).)

The Court disagrees with Defendant that the ALJ's reasons for assigning little weight to Drs. Nunnelley's and Edelstein's opinions were specific, legitimate, and supported by substantial evidence. The quote above is the extent of the ALJ's analysis of both treating physicians' opinions.

If evidence in the record contradicts the treating physician's opinion, the ALJ may reject it for specific, legitimate reasons that are based on substantial evidence. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Embrey*, 849 F.2d at 421. In doing so, the ALJ must make findings that set out a "detailed and thorough summary of the facts and c*onflicting* clinical evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (emphasis added) (citation omitted).[1] The ALJ's only reference to Drs. Nunnelley's and Edelstein's opinions was that both stated Plaintiff had a limited ability to perform "less than sedentary work." (R. at 24.) The ALJ then noted that these "extreme limitations" are not supported by the record and conflict with Plaintiff's own statements. (*Id.*) These conclusory statements do not meet the Ninth Circuit's requirement to set out specific and legitimate reasons. *See Monroe v. Comm'r of Soc. Sec. Admin.*, No. CV-18-02571-PHX-JAT, 2019 WL 6712055, at *4 (D. Ariz. Dec. 10, 2019) ("An ALJ's conclusory statement that there is contradictory evidence in the record is not

---

[1] The parties do not argue that the ALJ failed to set out a detailed and thorough summary of the facts. The parties, however, do dispute whether the ALJ set out a detailed and thorough summary of the conflicting clinical evidence. Without the latter, an ALJ cannot properly reject a treating physician's opinion. *See Leusch v. Berryhill*, 358 F. Supp. 3d 896, 903 (D. Ariz. 2019).

a specific and legitimate reason to discount the opinion of a treating physician.").

Although the ALJ cited what he considered contradictory medical evidence,[2] the ALJ failed to connect any of the objective medical evidence from the record to any of Drs. Nunnelley's or Edelstein's opinions. *See Elgrably v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04760-PHX-JAT, 2018 WL 5264074, at \*7 (D. Ariz. Oct. 23, 2018) ("[I]t is unclear from the ALJ's opinion how [the treating physicians'] opinions even conflict with the medical evidence in this case."). The ALJ did not address any part of either Dr. Nunnelley's September 2012 opinion or Dr. Edelstein's two 2015 opinions besides their conclusion that Plaintiff could not do sedentary work. An ALJ's failure to make this connection is reversible error.[3] *See Monroe*, 2019 WL 6712055, at \*4–5.

Plaintiff also argues that "[i]t is error to reject a treating doctor's opinion on the basis it addresses a claimant's disability." (Pl. Br. at 13.) The ALJ did no such thing. Plaintiff isolates part of the ALJ's analysis that states, "[w]hether or not an individual can work is an administrative finding dispositive of the case, and therefore, reserved to the Commissioner." (R. at 24.) The ALJ, rather than any particular physician, is ultimately responsible for determining the RFC. 20 C.F.R. § 404.1546(c). The ALJ must consider "all the relevant evidence in [the] case record," including medical records, medical opinions, and symptom testimony provided by the claimant's "family, neighbors, friends, or other persons." *Id.* § 404.1546(a)(3). Although the ALJ erred by not providing a specific and legitimate reason to discount the treating physicians' opinions, the ALJ did

---

[2] The ALJ cites "2F/8, 60–64 [R. at 601, 653–57]; 5F/3 [R. at 680]; 6F/3 [R. at 687]; 9F/4–6, 10 [R. at 745–47, 751]; 17F/97 [R. at 1077]; 33F/7 [R. at 1398]; 36F/8 [R. at 1435]; 37F/1 [R. at 1526]; 45F/84, 86–91 [R. at 1961, 1963–68]; 41F/1–3 [R. at 1757–59]." (R. at 24.) The ALJ also points to Plaintiff's statements that she can walk "2.5 miles three times per week and able to care for her home and children without significant low back pain" to show inconsistency with the treating physicians' "extreme limitations." (*Id.*)
[3] An error is harmless if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 553 F.3d 1038 (9th Cir. 2008). The Court must look to whether the ALJ's decision is legally valid despite the error. *Carmickle v. Comm'r of Soc. Sec.*, 553 F.3d 1155, 1162 (9th Cir. 2008). Here, the ALJ's error in rejecting the treating physicians' opinion was not harmless because the ALJ did not include the less-than-sedentary limitations when calculating Plaintiff's RFC. *See Maske v. Comm'r of Soc. Sec. Admin.*, No. CV-18-04891-PHX-DWL, 2020 WL 813768, at \*6 (D. Ariz. Feb. 19, 2020) (finding harmful error where the ALJ improperly rejected a physician's opinion evidence).

1    not err in this respect.

2         In sum, the ALJ did not provide a specific, legitimate reason that is supported by

3    substantial evidence to properly discount Drs. Nunnelley's and Edelstein's opinions.

4    Therefore, the ALJ erred by assigning little weight to both treating physician's opinions

5    without the proper reasoning.

6                         **b.  Examining Physician's Opinion**

7         The ALJ also considered the opinion of the agency's consultative examining

8    physician, Dr. Keith Cunningham, M.D. (R. at 24.) The ALJ gave "great weight" to Dr.

9    Cunningham's opinion, noting:

> [Dr. Cunningham] opined that claimant should not climb
> ladders, ropes or scaffolds and would be restricted from
> working around heights. This most recent opinion is
> supported by a contemporaneous physical examination
> demonstrating that the claimant's conditions have not
> worsened. The opinion is consistent with the longitudinal
> record showing the claimant retaining an active ability to
> perform daily activities as well as control her symptoms with
> medication.

16   (R. at 24 (citations omitted).) Plaintiff argues that the ALJ erred by assigning Dr.

17   Cunningham's opinion "great weight." (Pl. Br. at 17–18.) Specifically, Plaintiff contends

18   that the ALJ's statement that Dr. Cunningham's opinion is supported by evidence

19   showing that her conditions have not worsened, the lack of overall support for the

20   assignment of "great weight," and the failure to follow applicable regulations constitute

21   reversible error. (*Id.*) Defendant asserts that the ALJ provided valid reasons supported by

22   substantial evidence to affirm the ALJ's "great weight" determination. (Def. Br. at 10–

23   11.)

24        The Court finds that the ALJ's weighing of Dr. Cunningham's opinion was

25   impacted by the discounting of the treating physicians' opinions. Because the treating

26   physician error is intertwined with the ALJ's "great weight" determination, the ALJ will

27   need to reconsider Dr. Cunningham's opinion along with Plaintiff's treating physicians'

28   opinions on remand. *See Owens v. Comm'r of Soc. Sec. Admin.*, No. CV-16-00970-PHX-

1    JAT, 2017 WL 971858, at *5 (D. Ariz. March 14, 2017) (finding that further

2    determination of other medical sources must be reevaluated on remand because the ALJ's

3    error calls into question the "ultimate conclusion").

4        Plaintiff also argues that "Dr. Cunningham's report is silent on whether any

5    background medical records were provided by the ALJ or whether any imaging or

6    treatment records were reviewed." (Pl. Br. at 18.) Pursuant to 20 C.F.R. § 404.1517,

7    consultative examiners must be provided with "any necessary background information"

8    concerning a claimant's condition. Although Defendant contends that Dr. Cunningham

9    had "sufficient background information" because of a "history of the present illness"

10   summary in his report (Def. Br. at 15), the record is silent as to whether Dr. Cunningham

11   had access to Plaintiff's medical records. *See Peacock v. Comm'r of Soc. Sec. Admin.*,

12   No. CV-17-00523-PHX-BSB, 2018 WL 2753151, at *6–7 (D. Ariz. June 8, 2018)

13   (finding reversible error where the ALJ violated § 404.1517 by failing to provide the

14   examining physician with the plaintiff's "necessary background information,"

15   specifically his medical records). That said, *Peacock* only found error where the

16   "Commissioner [did] not dispute Plaintiff's assertion that the ALJ did not provide

17   Plaintiff's medical records" to the examining physician. *Id.* at *6. Here, Defendant

18   disputes Plaintiff's assertion that Dr. Cunningham did not rely on the proper background

19   information. (Def. Br. at 15.) There is no evidence suggesting that the ALJ failed to

20   provide these records. The Court finds no error with this issue. *See Andrews v. Shalala*,

21   53 F.3d 1035, 1039–40 (9th Cir. 1995).

22        In sum, given the ALJ's harmful error with respect to Drs. Nunnelley's and

23   Edelstein's opinions, the ALJ on remand shall also reevaluate Dr. Cunningham's

24   opinion.[4]

25   _____
     [4] Plaintiff also argues that the ALJ did not properly analyze Dr. Cunningham's opinion
26   pursuant to 20 C.F.R. § 404.1527(c)(2)–(6). (Pl. Br. at 18.) The ALJ stated that he
     "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527."
27   (R. at 21.) The ALJ also adequately analyzed the "consistency" and "supportability"
     factors for Dr. Cunningham's evaluation. (R. at 23.) "Consideration is all that is
28   required." *Polk v. Comm'r of Soc. Sec. Admin.*, No. CV-19-04705-PHX-JAT, 2020 WL
     3969825, at *6 (D. Ariz. July 14, 2020) (citations omitted). An ALJ complies with 20
     C.F.R. § 404.1527 where he states that he "considered opinion evidence in accordance"

1

## B.    Plaintiff's Symptom Testimony

2      Plaintiff also contends that the ALJ improperly rejected her symptom testimony.

3  (Pl. Br. at 19.) Social Security regulations require ALJs to consider a claimant's

4  statements about her symptoms when determining the claimant's RFC. *See* 20 C.F.R.

5  §§ 404.1545(a)(3), 404.1529(a). Plaintiff contends the ALJ failed to provide "specific,

6  clear, and convincing reasons" for rejecting Plaintiff's symptom testimony. (Pl. Br. at

7  22.) Plaintiff also asserts that "the ALJ failed to tie-in the characterization of the medical

8  record with any particular symptom testimony." (*Id.* at 20.) Defendant argues "[t]he ALJ

9  set forth multiple, specific and valid reasons supported by substantial evidence for

10 discounting some of Plaintiff's subjective symptoms statements." (Def. Br. at 16.) The

11 Court agrees with Defendant.

12     In assessing a claimant's RFC, the ALJ considers a claimant's subjective

13 allegations and first "determine[s] the extent to which [any] alleged functional limitations

14 and restrictions due to pain or other symptoms can reasonably be accepted as consistent

15 with the medical signs and laboratory findings and other evidence to decide how [the]

16 symptoms affect [the claimant's] ability to work." 20 C.F.R. § 416.929(a); *see* 20 C.F.R.

17 § 416.929(c)(2). Absent a finding of malingering, the ALJ must provide "specific, clear

18 and convincing reasons" for rejecting a claimant's allegations. *Treichler*, 775 F.3d at

19 1102. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208

20 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds

21 not to be credible and must explain what evidence undermines the testimony." *Id.*

22 "Although the ALJ's analysis need not be extensive, the ALJ must provide some

23 reasoning in order for [the Court] to meaningfully determine whether the ALJ's

24 conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099. The

25 ALJ may consider "whether the claimant takes medication or undergoes other treatment

26 for the symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see*

27

28 with those requirements. *Id.* Here, the ALJ complied with 20 C.F.R. § 404.1527(c)(2)–
(6).

*Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). The ALJ may also consider "whether the alleged symptoms are consistent with the medical evidence."[5] *Lingenfelter*, 504 F.3d at 1040. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the ALJ considered Plaintiff's testimony that "the primary conditions preventing her from working are her back and rheumatoid arthritis that affects her back, ankles, hips and knees." (R. at 21.) The ALJ also noted that Plaintiff "testified to difficulty gripping objects with both hands . . . migraine headaches as well as psychological symptoms that exacerbate her functional limitations." (*Id.*) The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (*Id.*) Plaintiff, therefore, satisfied the first step of the analysis. At step two, however, the ALJ determined Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record. (*Id.*) To support this finding, the ALJ listed several reasons, such as inconsistency with the evidence and Plaintiff's statements, records describing full strength and "mild or unremarkable" findings, Plaintiff's stability with medication and procedures, records indicating Plaintiff's ability to walk, and Plaintiff's ability to take care of "her home and children." (R. at 22–24.) The Court addresses whether the ALJ's reasons for rejecting Plaintiff's symptom testimony were sufficiently specific, clear, and convincing.

First, to address Plaintiff's "complaints of back pain that radiates to the legs," the ALJ noted her symptom testimony and compared it with the record's evidence. (R. at 22–23.) Plaintiff is incorrect that "the ALJ failed to tie-in the characterization of the medical record" with her back-pain symptom testimony. (Pl. Br. at 20.) For example, the ALJ noted that Plaintiff's back pain was inconsistent with several cervical and lumbar spine

_____

[5] "[A]n ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter*, 504 F.3d at 1040 n.11.

1    imaging in 2012. (R. at 22.) A cervical spine diagnostic imaging was found to be

2    "unremarkable" and "negative," an X-ray revealed a "[n]ormal lumbar spine," and

3    magnetic resonance imaging showed "mild" lumbar spine impressions. (R. at 653, 655,

4    656–57.) The ALJ also analyzed a January 2014 report in which Plaintiff "continued to

5    complain of back and similar pains." (R. at 22.) As the ALJ recognized, this report

6    displayed inconsistent findings with Plaintiff's symptom testimony, such as full muscle

7    strength, normal findings for her cervical, thoracic, and lumbar spine, and that she was in

8    no acute distress.[6] (R. at 686–88.) The ALJ reviewed other medical evidence showing

9    unremarkable changes in Plaintiff's spine and "excellent" range of motion in her lumbar

10   spine. (R. at 1397–99, 1526, 1758.) An ALJ must "rely on examples to show why they do

11   not believe that a claimant is credible." *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir.

12   2014). Here, the ALJ relied on many examples to support his conclusion. Accordingly,

13   the Court finds that the ALJ's reasons for discounting Plaintiff's testimony were specific,

14   clear, and convincing.

15       The ALJ also identified inconsistencies with Plaintiff's pain relating to her

16   rheumatoid arthritis, which impacts her "hands, feet, arms, wrists, back and hips." (R. at

17   22.) The ALJ pointed to examples that show positive or unremarkable findings related to

18   this impairment. For example, the ALJ cited several medical exams and X-rays that

19   conflict with Plaintiff's symptom testimony. (R. 22–24 (citing R. at 696, 1077, 1758–59,

20   1963–68.) The ALJ did not fail "to tie-in" these parts of the record with Plaintiff's

21   symptom testimony. Plaintiff also argues that the ALJ's citation[7] to several "mild or

22   unremarkable" findings throughout the record, "do not support a finding that [Plaintiff's]

---

[6] Plaintiff argues that the ALJ's statement that she was "in no acute distress" is "an insufficient justification for finding a claimant less than credible." (Pl. Br. at 21 (citing *Ekola v. Colvin*, No. CV 13-01812-PHX-HRH, 2014 WL 4425783 (D. Ariz. Sept. 9, 2014)).) Even if this was an improper reason for discounting Plaintiff's back-pain symptom testimony, the ALJ relied on many other valid reasons to support this finding. *See Bray*, 554 F.3d at 1227 (finding ALJ's reliance on an invalid reason to discount claimant's allegations was "harmless error" where ALJ had also relied on other valid reasons).
[7] The ALJ cites "2F/8, 60–64 [R. at 601, 653–57]; 5F/3 [R. at 680]; 6F/3 [R. at 687]; 9F/4–6, 10 [R. at 745–47, 751]; 17F/97 [R. at 1077]; 33F/7 [R. at 1398]; 36F/8 [R. at 1435]; 37F/1 [R. at 1526]; 45F/84, 86–91 [R. at 1961, 1963–68]; 41F/1–3 [R. at 1757–59]." (R. at 23.)

1   symptom testimony was invalid." (Pl. Br. at 21.) Although Plaintiff cites other treatment

2   records, and other language within the ALJ's cited medical evidence, to show there is a

3   more rational interpretation, the Court must uphold the ALJ's credibility conclusion

4   because it is supported by substantial evidence in the record. *See Andrews v. Shalala*, 53

5   F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility,

6   resolving conflicts in medical testimony, and for resolving ambiguities. [Courts] must

7   uphold the ALJ's decision where the evidence is susceptible to more than one rational

8   interpretation."); *see also Batson v. Comm'r of Social Sec. Admin.,* 359 F.3d 1190, 1196

9   (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the

10   ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ."). The

11   ALJ's reasoning provided another specific, clear, and convincing way to discount

12   Plaintiff's symptom testimony.

13       Next, the ALJ found that Plaintiff's "pain has been treated with narcotic

14   medications since the alleged onset date," and this pain has "remained stable." (R. at 23.)

15   Social Security regulations allow ALJs to consider the effectiveness of medications taken

16   to alleviate pain when evaluating the intensity and persistence of a claimant's subjective

17   symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv). The ALJ pointed to medical exams that

18   show medications have improved or controlled Plaintiff's functioning and pain. (R. at

19   23–24 (citing R. at 594, 685, 1543, 1764, 1878).) In one report, Plaintiff stated that

20   "medications provide effective pain control, and improve quality of life by at least 30%."

21   (R. at 634.) In other reports that the ALJ cited, Plaintiff stated that the medication

22   improved her "quality of life by 50%." (R. at 1545, 1551, 1567.) As noted, the Court

23   cannot second-guess the ALJ's credibility finding if it is supported by substantial

24   evidence in the record, which is true even when the evidence is subject to more than one

25   rational interpretation. *Thomas*, 278 F.3d at 959. Even though the ALJ cited enough

26   evidence to support his finding, an "ALJ does not need to discuss every piece of

27   evidence." *Howard ex. rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). As

28   Defendant points out, a further look at the record reveals many more instances where

1    Plaintiff's impairments were positively impacted or, at the very least, controlled by

2    medication. (*See* Def. Br. 12–13.) After consideration, the ALJ's reason for discounting

3    Plaintiff's testimony on this basis is supported by substantial evidence and is adequately

4    specific, clear, and convincing.

5         The ALJ also found that when Plaintiff received certain procedures and

6    participated in physical therapy, she "reported pain relief." (R. at 23.) The ALJ cited

7    Plaintiff's own statement that reported pain relief up to 80% after undergoing medical

8    branch block procedures. (*Id.*) The ALJ also cited physical therapy reports in which

9    Plaintiff responded positively. (*Id.*) When evaluating the intensity and persistence of a

10   claimant's subjective symptoms, the ALJ may consider the treatment the claimant

11   receives for relief of pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(v). For

12   example, at one physical therapy appointment, Plaintiff reported reduced tightness and

13   improved mobility. (R. at 1925.) Most importantly, Plaintiff's own reported relief from

14   medical procedures of up to 80% supports the ALJ's finding. (R. at 658–64.) Although

15   Plaintiff cites other treatment records, and other language within the ALJ's cited medical

16   evidence, to show there is a more rational interpretation, the Court must uphold the ALJ's

17   credibility conclusion because it is supported by substantial evidence in the record. *See*

18   *Andrews*, 53 F.3d at 1039–40.

19        Finally, the ALJ provided other reasons for discounting Plaintiff's allegations,

20   such as records indicating inconsistencies with her reported activity level and Plaintiff's

21   ability to take care of "her home and children." (R. at 22–24.) Because the Court has

22   found at least two legally valid reasons supported by substantial evidence for the ALJ's

23   discounting of Plaintiff's allegations, it need not determine the validity of the ALJ's other

24   reasons. Even if the Court were to find error in one or more of these remaining reasons, it

25   would not change the outcome. *See Bray*, 554 F.3d at 1227 (finding the ALJ's reliance on

26   an invalid reason to discount claimant's allegations was "harmless error" where the ALJ

27   had also relied on other valid reasons).

28        Accordingly, Plaintiff's arguments fail to persuade the Court that the ALJ

1   improperly rejected her symptom testimony.[8]

2     **C. Non-severe Determinations**

3     Finally, Plaintiff argues that the ALJ improperly concluded that several

4   impairments were not severe at step two. (Pl. Br. at 23.) Specifically, Plaintiff objects to

5   the ALJ's finding that her rheumatoid arthritis, migraine headaches, and lumbar and

6   cervical spine impairments were not severe. (*Id.*) The ALJ found that Plaintiff had one

7   severe impairment: chronic pain syndrome. (R. at 18.)

8     "An impairment or combination of impairments is not severe if it does not

9   significantly limit [the claimant's] physical or mental ability to do basic work activities."

10   20 C.F.R. § 404.1522(a). Basic work activities are "the abilities and aptitudes necessary

11   to do most jobs," such as walking, standing, seeing, hearing, speaking, understanding

12   instructions, use of judgment, responding appropriately to usual work situations, and

13   dealing with changes in a routine work setting. *Id.* § 404.1522(b). "[A]n ALJ may find

14   that a claimant lacks a medically severe impairment or combination of impairments only

15   when his conclusion is clearly established by medical evidence." *Webb v. Barnhart*, 433

16   F.3d 683, 687 (9th Cir. 2005) (internal quotations and citation omitted); *see also Smolen*

17   *v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (An ALJ may find an impairment or

18   combination of impairments "not severe" only if "the evidence establishes a slight

19   abnormality that has no more than a minimal effect on an individual's ability to work.")

20   (internal quotations omitted) (citing SSR 85-28, 1985 WL 56856; *Yuckert v. Bowen*, 841

21   F.2d 303, 306 (9th Cir. 1988)).

22   [8] Plaintiff also argues that the ALJ could not require her to provide medical evidence of
23   the severity of her impairments. (Pl. Br. at 20.) This argument lacks merit as the
regulations state that the ALJ must "determine the extent to which [a claimant's] alleged
functional limitations and restrictions due to pain or other symptoms can reasonably be
24   accepted as consistent with the *medical signs and laboratory findings* and other evidence
to decide how [her] symptoms affect [her] ability to work." 20 C.F.R. § 404.1529(a)
25   (emphasis added). The ALJ may not "reject [a claimant's] statements . . . solely because
the available objective medical evidence does not substantiate [them]." *Id.*
26   § 404.1529(c)(2) (emphasis added). Therefore, if the ALJ articulates other valid reasons
for discounting the claimant's allegations, as he did here, it is not improper to base the
27   discount, in part, on a lack of support from the objective medical evidence. *See*
*Lingenfelter*, 504 F.3d at 1040; *Schott v. Comm'r of Soc. Sec. Admin.*, No. CV-19-00389-
28   PHX-JJT, 2019 WL 5782324, at *5 (D. Ariz. Nov. 6, 2019).

The Court finds no reversible error in the step two analysis as it pertains to Plaintiff's rheumatoid arthritis, migraine headaches, and lumbar and cervical spine impairments. Contrary to Plaintiff's assertion, the ALJ addressed Plaintiff's rheumatoid arthritis impairment with detail. The ALJ noted that Plaintiff, in 2013, only saw "a rheumatologist for a few five-minute appointments," and in 2015, "was still reporting that she was having trouble getting a rheumatologist." (R. at 19.) The ALJ also mentioned that a 2018 evaluation showed right hand and foot issues "as stable, chronic juvenile arthritis" and testing "had not shown markers suggesting active inflammatory disease." (*Id.*) The ALJ considered the evidence for migraine headaches and lumbar and cervical spine impairments but found that the "evidence does not reveal that these impairments result in any work related limitations." (*Id.*)

Most importantly, even though the ALJ did not find Plaintiff's rheumatoid arthritis, migraine headaches, and lumbar and cervical spine impairments "severe" at step two, the ALJ nonetheless resolved step two in Plaintiff's favor and adequately addressed these impairments later in the RFC assessment. (*See* R. at 21–25.) The ALJ also noted that Plaintiff's "pain allegations from all sources including back pain and rheumatoid arthritis have been considered under the severe impairment designated chronic pain syndrome." (R. at 19.) Any error in their omission at step two is therefore harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that an ALJ's failure to include an impairment at step two was harmless error where the record reflected that the ALJ considered any limitations posed by the impairment at step four); *see also Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (noting that omission of an impairment at step two could only prejudice the claimant at step three or in the RFC determination where step two was resolved in the claimant's favor).

## IV.    CREDIT-AS-TRUE RULE

Plaintiff asks that the Court apply the credit-as-true rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 25.) The credit-as-true rule applies if three elements are present. *Treichler*, 775

F.3d at 1099–1102. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even if these requirements are met, the Court retains the flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act. *Id.* at 995. Considering "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules," the Court finds that "further administrative proceedings would be useful." *Treichler*, 775 F.3d at 1103–04 (citation omitted). Thus, a remand for further proceedings is appropriate in this case.

V.      **CONCLUSION**

        Accordingly,

        **IT IS ORDERED** reversing the October 30, 2018 decision of the Administrative Law Judge (R. at 15–26) and remanding for further administrative proceedings consistent with this Order.

        **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

        Dated this 19th day of November, 2020.

                                        Michael T. Liburdi
                                        _____
                                        Michael T. Liburdi
                                        United States District Judge